**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CURTIS LEE DALE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 20-1248 (EGS) |
| U.S. DRUG ENFORCEMENT AGENCY, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

Plaintiff Curtis Lee Dale brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, demanding release of records maintained by the Drug Enforcement Administration ("DEA").[1] This matter has come before the Court on the Defendant's Motion for Summary Judgment (ECF No. 19), and for the reasons discussed below, the Court GRANTS the motion.

## I. BACKGROUND

Plaintiff, who was the subject of a DEA investigation leading to his conviction of various drug offenses, *see United States v. Dale*, No. 3:16-cr-00033 (S.D. Iowa Feb. 27, 2017), *aff'd*, No. 17-1505 (8th Cir. Mar. 19, 2018) (per curiam), submitted three FOIA requests to DEA for the following information:

- 302 reports from a specified DEA Agent on dates May 25 and 27, 2016, and June 1 and 2, 2016, from Rock Island, Illinois
- the evidence log from Rock Island, Illinois from June 1-8, 2016 for case #3:16-MJ-42 and 3:16-CR-33

---

[1]  Although plaintiff also invokes the Administrative Procedures Act, *see* Compl. ¶ 1, this action proceeds only under FOIA. *See Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537–38 (7th Cir. 2005)).

1

- all 302 reports from May 5, 2016 through June 6, 2016 for case #3:16-cr-33
- Federal Express records from Rock Island to the North Central Laboratory located in Chicago, IL, from June 5, 2016 through August 10, 2016, for case #3:16-CR-00033 and 3:16-MJ-42
- any 302 reports by a specified Task Force Officer ("TFO") for case #3:16-cr-00033 and 3:16-MJ-42
- any and all 302's written by a specified DEA Special Agent & TFO from May 10, 2016 through August 9, 2016, from Rock Island case 3:16-CR-33 and 3:16-MJ-42
- any drug storage locker log sheets from May 31, 2016 through June 10, 2016
- any log in and log out sheets
- any signed reports by the Acting Resident Agent in Charge.

*See* Corrected and Amended Statement of Material Facts Not in Genuine Dispute (ECF No. 25-1, "SMF") ¶¶ 2-4; *see also* Decl. of Angela D. Hertel (ECF No. 19-3, "First Hertel Decl."), Exhs. A-C (ECF Nos. 19-4, 19-5 and 19-6). DEA assigned the matter a single tracking number, 19-00413-P. *See* SMF ¶ 5.

A search of DEA's electronic databases, described in greater detail below, located 157 pages of records at DEA's Omaha Division and its North Central Laboratory. *See id.* ¶¶ 14-16. On October 14, 2020, DEA released 103 pages in part, after having redacted information under Exemptions 6, 7(C), 7(D), 7(E) and 7(F). *Id.* ¶ 20. On January 5, 2021, DEA notified plaintiff that it erred by having "inadvertently missed" 54 pages of responsive records. *Id.* ¶ 22. Of these 54 pages, DEA released 32 pages in part, having redacted information under Exemptions 6, 7(C), 7(E), and 7(F). *Id.* In addition, DEA referred 19 pages to the Federal Bureau of Investigation ("FBI") and three pages to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *See id.* ¶ 23. FBI released 19 pages in part, having redacted information under Exemption 7(E), *id.* ¶ 24, and ATF withheld its three pages in full under Exemption 3, *id.* ¶ 25.[2]

---

[2] Plaintiff sent DEA a fourth letter narrowing the scope of his request. *See* First Hertel Decl., Ex. E (ECF No. 19-8). The letter was multiple pages, *see* First Hertel Decl. ¶ 23, but in error, DEA staff neglected to scan all of its pages, *id.*; *see id.* ¶ 24. "Because DEA could not confirm all aspects of the narrowed request and because [plaintiff] was the subject of the identified investigative case, DEA determined it would process as responsive all 157 pages

2

**II. DISCUSSION**

    **A. Summary Judgment in a FOIA Case**

The "vast majority" of FOIA cases can be decided on motions for summary judgment. *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate." *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 6 (D.D.C. 2014) (citations omitted).

    **B. DEA's Search for Responsive Records**

        **1. Agency Obligation to Conduct a Reasonable Search**

"An agency is required to perform more than a perfunctory search in response to a FOIA request." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). It "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks and citations omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original) (citations omitted). To meet its burden, an agency may rely on affidavits or

---

identified as part of the investigative case number, rather than narrow the scope based on incomplete information." *Id.* ¶ 24; *see* SMF ¶ 19.

declarations explaining the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). At a minimum, the agency must "specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)). If the record before the Court "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### 2. NADDIS Search

DEA's declarant explains that the agency maintains investigative records in the Narcotics and Dangerous Drugs Information System ("NADDIS"), "a centralized . . . data index system that captures discrete information collected during the course of an investigation, including a brief historical summary of case activities from investigative reports, such as dates of arrest and any subsequent criminal sentences." First Hertel Decl. ¶ 18; *see* SMF ¶ 9. While NADDIS itself is not a repository of DEA records, *see* First Hertel Decl. ¶ 20, it "provides an abstract of information . . . includ[ing] investigative case numbers linked to an individual who is the subject of [an] investigation," *id.* ¶ 18; *see id.* ¶ 20.

When an individual becomes the subject of a DEA investigation, information about him "is indexed into NADDIS," and "NADDIS automatically assigns [him] a unique system-generated number, [called] the NADDIS number." *Id.* ¶ 19. As information from the

investigation is added, NADDIS "automatically links that information to the individual's NADDIS number." *Id.*; *see id.* ¶ 20.

A NADDIS search "is the practical means by which DEA identifies and locates investigative records across all of [its] offices worldwide." *Id.* ¶ 18. To determine whether DEA maintains investigative records about a particular individual and where those records might be located, one "enters into NADDIS a unique search term," such as an individual's Social Security number or combination of his name and date of birth. *Id.* ¶ 20. If DEA has responsive records, NADDIS generates "an abstract of information, such as an investigative case number, investigative report number, or other record identifier, linked to the unique search term." *Id.* A record identifier, in turn, is "used to locate the records linked to the investigative case number." *Id.* The investigative case number is "a means to determine whether potentially responsive records exist and where, across all DEA offices worldwide, those records may be located." Second Decl. of Angela D. Hertel (ECF No. 25-2, "Second Hertel Decl.") ¶ 5.

DEA's declarant explained that a NADDIS query using plaintiff's name as a search term yielded one investigative case number and confirmed that plaintiff was the subject of that investigation. First Hertel Decl. ¶ 21; *see* Second Hertel Decl. ¶¶ 6, 10. Given plaintiff's reference to Rock Island, Illinois, in his FOIA request, DEA staff concluded that records linked to that "investigative case number would be under the custody and control of [DEA's] Omaha Division," the geographical jurisdiction of which "covers investigations in Nebraska, Minnesota, North Dakota, South Dakota, and Iowa, including the Quad Cities at the Iowa-Illinois border" encompassing Rock Island, Illinois. First Hertel Decl. ¶ 22. "No other investigative case numbers were identified that matched the details of [plaintiff's] requests or where [plaintiff] was the subject." Second Hertel Decl. ¶ 10.

5

### 3. IMPACT Search

Omaha Division staff used the investigative case number as a search term to query the Investigative Management Program and Case Tracking system ("IMPACT"), where DEA maintains its official files for all investigative records, which typically include "all investigative reports, forms, affidavits, search warrants, and evidence inventories." First Hertel Decl. ¶ 23. The declarant explained that "all records associated with an investigation," including handwritten notes, must "be submitted into IMPACT." Second Hertel Decl. ¶ 7. The IMPACT search, the declarant stated, was not limited to any specific record plaintiff identified in his FOIA request; rather, the search was "for all records associated with the identified investigative case number . . . in its custody and control." *Id.* ¶ 8. North Central Laboratory staff, too, "used the . . . investigative case number to conduct a search of [laboratory] records linked to [it]." First Hertel Decl. ¶ 23; *see* Second Hertel Decl. ¶ 8.

The Omaha Division and North Central Laboratory searches yielded 157 pages of records linked to the investigative number, among which were "reports of investigation; reports of drug and non-drug property seized during the execution of search warrants; inventory receipts; seizure forms including probable case justification; affidavit in support of criminal complaint, applications for and search and seizure warrants; chemical analysis lab reports; and evidence custodian log sheets." First Hertel Decl. ¶ 23. According to the declarant, the Omaha Division does not keep copies of affidavits supporting applications for search warrants, and the laboratory does not maintain shipping labels once the evidence it receives is logged into custody. *See id.*

### 4. Plaintiff's Challenge to DEA's Searches

The Court makes three observations upon review of plaintiff's opposition to DEA's summary judgment motion. First, plaintiff appears to equate DEA's obligation to respond to a

6

FOIA request with the government's obligation to produce discovery materials to a defendant in a criminal case. *See, e.g.*, Pl.'s Response to Def.'s Mot. for Summ. J. (ECF No. 21, "Pl.'s Opp'n") at 1, 21. He is mistaken. "[D]isclosure obligations under FOIA and disclosure obligations in criminal proceedings are separate matters, governed by different standards." *Marshall v. FBI*, 802 F. Supp. 2d 125, 136 (D.D.C. 2011); *see Davis v. U.S. Dep't of Justice*, 970 F. Supp. 2d 10, 17 (D.D.C. 2013) ("The plaintiff's belief that certain information should have been disclosed during his criminal case does not translate into an obligation on the part of the [government] to release information that otherwise is protected under a FOIA exemption."); *see also United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977) (holding "that the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for obtaining information through the judicial process").

Second, plaintiff focuses entirely on the results of DEA's searches, complaining that certain documents were not located and released. *See, e.g.*, Pl.'s Opp'n at 3-8. For example, although evidence obtained by tracking plaintiff's cell phones and vehicles was introduced at trial, plaintiff notes that DEA did not release copies of the warrants, warrant applications, and supporting affidavits used to obtain that evidence. *See id.* at 6-7. The adequacy of a search is determined by its methods, not its results. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Where, as here, the agency demonstrates that its searches were reasonably calculated to locate responsive records, its purported failure to produce particular documents of interest to the requester does not invalidate its search efforts. *See Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam) (finding that "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested

records"); *Iturralde*, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate.").

Third, plaintiff demands that DEA explain why it failed to produce certain documents. For example, plaintiff complains that DEA did not release a copy of the warrant for tracking his cell phone in response to his FOIA request, and the government did not list the warrant on its exhibit list for trial. *See* Pl.'s Opp'n at 6. He asks the Court to direct DEA "to produce this warrant, affidavit, and application," and if it cannot do so, to "give a written statement as to why this warrant is not part of [its] IMPACT database." *Id.* Similarly, given DEA's alleged failure to produce copies of warrants for tracking plaintiff's vehicles, plaintiff demands an explanation why the warrants were not found in IMPACT. *See id.* at 7-8. Plaintiff imposes an obligation FOIA does not place on DEA. No agency is required to create materials or to answer questions in responding to a FOIA request. *See Nance v. FBI*, 845 F. Supp. 2d 197, 203 (D.D.C. 2012) ("FOIA does not require agencies to create documents, answer questions, or explain what may have happened to documents that may have existed at one point but are no longer in the agency's possession"); *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 182 (D.D.C. 2011) (concluding that agency "is not obligated to respond to questions, requests for research or, as in this case, a request to authenticate or verify the contents of a particular document"), *aff'd sub nom. Jimenez v. Executive Office ex rel. U.S. Attorneys*, No. 11-5206, 2012 WL 556176 (D.C. Cir. Feb. 13, 2012).

Based on information plaintiff provided in his FOIA request, including his criminal case number and place where events relevant to the criminal case occurred, it is reasonable that DEA conducted searches of Omaha Division and North Central Laboratory records using plaintiff's name as a search term. Notwithstanding plaintiff's dissatisfaction with the search results, the

Court concludes that DEA's searches for records responsive to plaintiff's FOIA request were adequate.

### C. Exemptions 3, 6 and 7

Plaintiff does not challenge any agency's decision to withhold information under any claimed exemption. Nevertheless, "[a] defendant moving for summary judgment must still discharge the burden the rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way[.]" *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) (citations and internal quotation marks omitted). "The burden that the movant 'always bears' is that of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 93-94 (citation omitted).

#### 1. Exemption 3

Under Exemption 3, an agency may withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The statute must:

> (A)(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[] particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cite[] to this paragraph.

*Id.*

The records referred by DEA to ATF "are two firearms trace summaries relating to efforts by the ATF's National Tracing Center to track the history of a firearm recovered by DEA agents during the course of a federal criminal investigation." Decl. of Adam C. Siple (ECF No. 19-16, "Siple Decl.") at 1. ATF's declarant explains that "[t]hese firearms trace summaries are generated entirely from information maintained in the ATF's Firearms Tracing System

9

database," and that "Congress barred federal agencies from using appropriated funds" to disclose any information maintained therein. Siple Decl. at 1-2. Accordingly, ATF applies Exemption 3 in conjunction with the Consolidated Appropriations Act of 2012, Pub. L. No. 112–55, 125 Stat. 552 (2011), to withhold the responsive material. Siple Decl. at 1-2. Given "the statutory prohibition on the disclosure of firearms trace information," ATF "decline[s] to produce the trace summaries to Plaintiff." Siple Decl. at 2. The Court concludes that this firearms trace information properly is withheld under Exemption 3. *See Cooper v. U.S. Dep't of Justice*, No. 1:99-CV-2513, 2022 WL 602532, at *27 (D.D.C. Mar. 1, 2022); *Michael v. U.S. Dep't of Justice*, No. 1:17-CV-0197, 2018 WL 4637358, at *9 (D.D.C. Sept. 27, 2018).

### 2. Exemptions 6 and 7

#### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted). DEA easily meets its burden.

DEA's declarant explains that the agency's principal mission is "enforce[ment] of the controlled substance laws and regulations of the United States" pursuant to the Controlled Substances Act, *see* 21 U.S.C. § 801 *et seq*. First Hertel Decl. ¶ 5. Among other functions, DEA conducts criminal investigations of individuals and organizations "involved in the growing,

manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States." *Id.* Plaintiff is the subject of such an investigation. *See id.* ¶ 21. The declarant states that all of the responsive records "were compiled as part of a law enforcement criminal investigation" of which plaintiff was the subject and are "maintained as part of a criminal investigative case." *Id.* ¶ 29.

DEA relies on Exemption 6 in conjunction with Exemptions 7(C), 7(D) and/or 7(F) to protect identifying information about third parties. *See generally* First Hertel Decl. ¶¶ 30-43. Because all the responsive records were compiled for law enforcement purposes, the Court's analysis is limited to Exemption 7. *See Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

### b. Exemption 7(C)

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989).

DEA withholds "personally identifying information about non-law enforcement individuals," First Hertel Decl. ¶ 30, such as their "names, addresses, phone numbers, Social Security numbers, dates of birth, and medical information," *id.* ¶ 31. It also withholds "serial numbers of firearms seized during the investigation because disclosure of the information could

11

be traced back to a specific individual." *Id.* The declarant explains that DEA identified no public interest in disclosure of this information to outweigh the individuals' significant privacy interests. *See id.* ¶¶ 32-34.

In addition, relying on Exemption 7(C) in conjunction with Exemption 7(F), DEA withholds "personally identifying information [about] DEA employees and state law enforcement employees working in conjunction with DEA investigations, such as Task Force Officers." *Id.* ¶ 35. Specifically, it withholds identifying information about "DEA Special Agents, laboratory personnel, employees involved in the custody and disposition of drug and non-drug evidence, and state law enforcement employees," to include their "names; unpublished individual phone numbers; specific locations of offices that are not generally made public by DEA, including the street address of a DEA evidence storage facility; and Group Numbers (solely internal code that identifies an office location)." *Id.*

In this Circuit, there exists "a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard Servs.*, 926 F.2d at 1206) (additional citation omitted). Plaintiff makes no such showing, and the Court concludes that the personal identifying information about third parties, among whom are DEA and state law enforcement personnel, properly is protected under Exemption 7(C).[3] It is well settled that names and telephone numbers fall within the scope of

---

[3] Similarly, had the firearms trace summaries not been withheld in full under Exemption 3, ATF's declarant adequately justifies reliance on Exemption 7(C) to withhold "names and contact information for third persons, including individual law enforcement officers" on the ground that release of such personal identifying information "would constitute a clearly unwarranted invasion of [their] privacy." Siple Decl. at 2.

12

Exemption 7(C), as does other information identifying third parties, to include phone numbers, Social Security numbers, dates of birth, and medical information. *See, e.g.*, *Burnett v. U.S. Drug Enf't Admin.*, No. 1:19-CV-00870, 2021 WL 1209142, at *4 & n.1 (D.D.C. Mar. 31, 2021) (concluding that "information that could be used to identify law enforcement personnel and third parties, including confidential informants," such as "telephone numbers and addresses, fugitive declarations, vehicle registrations that could be used to identify third-parties," was properly withheld under Exemptions 6 and 7(C)), *aff'd sub nom. Burnett v. Dep't of Justice*, No. 21-5092, 2021 WL 6102268 (D.C. Cir. Dec. 3, 2021); *Lasko v. Dep't of Justice*, 684 F. Supp. 2d 120, 133 (D.D.C. 2010) (protecting the identities of DEA Special Agents and state and local law enforcement officers), *aff'd*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (per curiam). However, DEA fails to demonstrate that office or storage facility locations fall within the scope of Exemption 7(C).

### c. Exemption 7(D)

Exemption 7(D) permits an agency to withhold information in law enforcement records if its release "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Under Exemption 7(D), and in conjunction with Exemptions 7(C) and 7(F), DEA withholds the identity of a confidential source and the information the source provided. *See* First Hertel Decl. ¶ 40. DEA's declarant explains:

> DEA policy requires that all [confidential sources] be vetted and established through a formal DEA process. The formal process includes a written agreement between DEA and the [source] where DEA explicitly states that the United States Government and DEA will protect the [source's] identity to the extent that it can under the law. In the records released to [plaintiff], the information withheld

13

> pursuant to Exemption 7(D), in conjunction with Exemptions 6, 7(C), and 7(F), was information provided to DEA by an established DEA [confidential source], which means that DEA had explicitly informed the [source] that it would protect the [source's] identity if it provided information to DEA. The [confidential source] provided information to DEA on [plaintiff's] criminal activities, which lead to his eventual prosecution.

*Id.* ¶ 41. Disclosure of this information "could potentially reveal the [source's] identity," and "would hamper future cooperation" with other informants. *Id.* ¶ 42. Further, the declarant explains, "[b]ecause of the nature of DEA's criminal investigations, any information that could identify a [confidential source] could subject the [source or the source's] family members to serious bodily harm, substantial repercussions, and possibly even death." *Id.*

DEA adequately demonstrates that it expressly granted confidentiality to a source who provided information in the course of a criminal investigation, and the confidential source's identity and the information the source provided properly are withheld. *See, e.g., Property of the People, Inc. v. Dep't of Justice*, 539 F. Supp. 3d 16, 27 (D.D.C. 2021) (approving reliance on Exemption 7(D) where foreign government provided information during cooperative investigation under an express assurance of confidentiality); *Washington Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, 486 F. Supp. 3d 141, 161 (D.D.C. 2020) (where "informants not only agreed to be interviewed with the understanding that their identities would be kept private, but that many could face serious consequences if their identities were revealed," reliance on Exemption 7(D) was proper).

### d. Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The first clause "provides categorical protection, requiring no demonstration of harm or balancing of interests." *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, No. 04-cv-00377, 2006 WL 1826185, at *7 (D.D.C. June 30, 2006) (citation and internal quotation marks omitted). The exemption's second clause "encompasses a broader range of information, but requires an assessment of whether disclosure poses a reasonable risk that the law could be circumvented." *Id.* (citation omitted). This requires that the agency surpass "a relatively low bar," such that it need "only . . . demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

DEA withholds six categories of information under Exemption 7(E): investigative case numbers, G-DEP identifiers, NADDIS numbers, controlled substance codes, and qualitative characterization codes. *See* First Hertel Decl. ¶¶ 28-29, 44-51. Three categories require no discussion. G-DEP identifiers and NADDIS numbers routinely are withheld, *see, e.g.*, *Kowal v. U.S. Dep't of Justice*, No. 1:18-CV-0938, 2021 WL 3363445, at *6 (D.D.C. Aug. 3, 2021); *Chavis v. U.S. Dep't of Justice*, No. 1:20-CV-00638, 2021 WL 1668069, at *8 (D.D.C. Apr. 28, 2021), *appeal dismissed sub nom. Chavis v. U.S. Dep't of Justice & Drug Enforcement Admin.*, No. 21-5150, 2021 WL 6102272 (D.C. Cir. Dec. 6, 2021), and insofar as controlled substances codes are "part of the G-DEP identifier," First Hertel Decl. ¶ 48, they, too, are protected. And the Court is persuaded that the remaining categories of information properly are withheld under Exemption 7(E).

Regarding investigative case numbers, which are "solely internal," the declarant explains that their disclosure would identify "the specific DEA office that initiated the investigation, the year the investigation was established, and the total number of cases initiated by the DEA office in a particular fiscal year." First Hertel Decl. ¶ 45. In addition, she states, disclosure would reveal "the investigative interest or priority given to the investigation" as well as the existence of "investigations of associates and criminal business enterprises . . . linked to the same investigative case number" and "sensitive, non-public references to the DEA Agents Manual." In short, DEA asserts, disclosure of investigative case numbers "could reasonably be expected to create a risk of circumvention of the law" in three ways. *Id.* Disclosure could "reveal[] how DEA's law enforcement databases work and render them vulnerable to manipulation[;]" suggest "the scope of a target's criminal operation[;]" and "reveal law enforcement techniques" in the DEA Agents Manual. *Id.*

Qualitative characterization codes, the declarant explains, are internal codes with "information about the primary role or criminal activity conducted within a drug trafficking organization by the subject or target of an investigation." *Id.* ¶ 49. DEA asserts that disclosure of these codes "could reasonably be expected to create a risk of circumvention of the law" by "reveal[ing] the scope of DEA's investigation and its understanding of the roles of the individuals involved." *Id.* Disclosure also "reveal[s] sensitive, non-public references to the DEA Agents Manual," specifically, DEA law enforcement techniques. *Id.*

Lastly, DEA withholds ORI and NCIC numbers, described as "unique identifiers assigned by the FBI to criminal justice agencies," under Exemption 7(E). First Hertel Decl. ¶ 50. These numbers authorize an entity, such as a court or state law enforcement agency, "to access data maintained by the FBI's Criminal Justice Information Services ('CJIS')" system. *Id.* The

16

declarant explains that disclosure of the numbers could allow a "unauthorized access to CJIS databases or NCIC criminal record information." *Id.* Further, she states, disclosure "would reveal techniques and practices used in DEA investigations and could provide information to individuals seeking to violate or circumvent the law to take proactive steps to counter operations and investigative actions taken by DEA during drug enforcement operations." *Id.* ¶ 51. According to the declarant, the means by which DEA and FBI "internally label and code information is a law enforcement technique and procedure . . . not generally known to the public," and if discrete pieces of information were disclosed, "applying a mosaic analysis, individuals . . . looking to violate or circumvent the law could use the information to change their pattern of activity to avoid detection, apprehension, or create alibis for criminal activities." *Id.* Thus, DEA adequately demonstrates that disclosure of investigative case numbers, qualitative characterization codes, and ORI and NCIC numbers either would reveal law enforcement techniques and procedures, or would create a risk of circumvention of the law.

### e. Exemption 7(F)

Exemption 7(F) protects records or information compiled for law enforcement purposes if its disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This exemption's "language is very broad," and that it "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Public Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014); *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (noting that "the phrase 'any individual'" makes clear that Exemption 7(F) now shields the life or physical safety of *any* person, not only the law enforcement personnel protected under the pre–1986 version of the

17

statute"). "In reviewing claims under Exemption 7(F), courts have inquired whether or not there is a nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 174 (D.D.C. 2016) (citing *Albuquerque Pub. Co. v. U.S. Dep't. of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)).

DEA relies on Exemption 7(F) in conjunction with Exemption 7(C), *see* SMF ¶ 32; First Hertel Decl. ¶¶ 28-29, 35-38, to protect "personally identifying information of DEA Special Agents, laboratory personnel, employees involved in the custody and disposition of drug and non-drug evidence, and state law enforcement employees," First Hertel Decl. ¶ 35. The Court need not revisit the withholding personal identifying information about third parties, to include names and individual telephone numbers, as this information already is protected under Exemption 7(C).

Relevant here is DEA's decision to withhold "specific locations of offices that are not generally made public by DEA, including the street address of a DEA evidence storage facility; and Group Numbers (solely internal code that identifies an office location)." First Hertel Decl. ¶ 35. The declarant states that "the disclosure of the identities and specific locations of DEA employees actively working on investigations, or who have worked on investigations resulting in a conviction, could endanger their [lives] and physical safety if members of the public, including drug trafficking organizations, have access to the information and wish to harm DEA employees because of their work." *Id*. ¶ 36. The Court concludes that this information falls within the scope of and properly is withheld under Exemption 7(F).

**D. Segregability**

"FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(b)); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). Thus, "a district court clearly errs when it approves the government's withholding of information under the FOIA without making an express finding on segregability." *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993)).

The Court accepts the declarant's representations that DEA staff reviewed the responsive records to ensure that all non-exempt segregable information has been released to plaintiff. *See* Hertel Decl. ¶¶ 39, 43, 52.

## III. CONCLUSION

The Court concludes that: (1) DEA conducted reasonable and adequate searches for information responsive to plaintiff's consolidated FOIA request; (2) ATF properly withheld firearms trace system information in full under Exemption 3; (3) DEA properly withheld personally identifying information about third parties under Exemption 7(C) ; (4) DEA properly withheld identifying information about and information provided by a confidential source under Exemption 7(D); and (5) DEA and FBI properly withheld investigative case numbers, G-DEP identifiers, NADDIS numbers, controlled substance codes, and qualitative characterization codes under Exemption 7(E); DEA properly withheld information about office and storage facility locations under Exemption 7(F); and DEA has released all reasonably segregable information.

Accordingly, defendant's summary judgment motion will be granted. An Order is issued separately.

DATE: August 31, 2022

/s/
EMMET G. SULLIVAN
United States District Judge